IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MICHAEL BROOMER,                     :
                                     :
            Petitioner,              :
                                     :
      v.                             :        Civil Action No. 23-570-GBW
                                     :
BRIAN EMIG, Warden, and              :
ATTORNEY GENERAL OF THE              :
STATE OF DELAWARE,                   :
                                     :
            Respondents.[1]          :

_____

Michael Broomer. *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General of the Delaware Department of
Justice, Wilmington, Delaware.  Attorney for Respondents.

_____

## **MEMORANDUM OPINION**

September 26, 2024
Wilmington, Delaware

_____

[1]The Court has substituted Warden Brian Emig for former Warden Robert May, an
original party to the case.  *See* Fed. Civ. R. P. 25(d).

Williams, District Judge:

      Petitioner Michael Broomer is an inmate at the James T. Vaughn

Correctional Center in Smyrna, Delaware. Presently pending before the Court is

Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and

an Amended Petition. (D.I. 2; D.I. 8) The State filed a Motion for Leave to File a

Motion to Dismiss and a Motion to Dismiss the Petition as Time Barred. (D.I. 16;

D.I. 16-1) Petitioner filed two Responses in Opposition. (D.I. 18; D.I. 32) For the

reasons discussed, the Court will grant the State's Motion for Leave to File a

Motion Dismiss and its Motion to Dismiss the Petition as Time-Barred, and

dismiss the Petition as barred by the limitations period prescribed in 28 U.S.C. §

2244.

## I.   BACKGROUND

> [Petitioner] and his co-defendant, Atiba Mayfield ("Mayfield"), were both charged with Murder in the First Degree, and various other crimes in connection with the shooting of Raekwan Mangrum ("Mangrum") on April 4, 2015 in Wilmington. The homicide was witnessed, at least in part, by Wilmington Police Officer Matthew Begany. Officer Begany heard what he thought were gunshots while on patrol traveling west on 4th Street toward Monroe Street. He turned southbound onto Monroe Street and observed a blue Focus at the end of an alleyway between 2nd and 3rd Streets. He saw a man standing outside of the Focus firing a handgun. Officer Begany called for backup and drove down the alleyway toward the Focus and the man firing the gun. He then lost sight of the shooter as the Focus began to head northbound towards his car and then turn suddenly onto a sidewalk between two rows of

houses. At that point, Officer Begany saw two black males in the vehicle and broadcast the Focus' license plate over the radio. He continued down the alleyway and observed Mangrum, who had been shot multiple times, a woman who had also been shot once in the leg, and her young child, who was not injured. The woman survived, but Mangrum died the next day.

After several Wilmington Police Officers spotted the Focus, a high-speed vehicle chase ensued involving many police officers. During the chase northbound on I-95, one of the officers observed a handgun being thrown from the passenger side of the Focus. A CZ .40 caliber semi-automatic firearm was recovered in the area where the officer saw a weapon being thrown from the Focus. A .380 Cobra FS 380, with one spent casing and five live rounds of ammunition was also found in along the path of the chase. Ultimately the chase ended in Pennsylvania where the driver, [Petitioner], and the passenger, Mayfield, fled on foot, but quickly were taken into custody. The police recovered a box of .380 ammunition from under the driver's seat of the Focus and a spent shell casing under the passenger side floor mat. [Petitioner] was convicted by a jury of Murder in the Second Degree, Reckless Endangering in the First Degree and two counts of PFDCF.

*State v. Broomer*, 2021 WL 4987625, at *1 (Del. Super. Ct. Oct. 25, 2021). On November 6, 2016, the Superior Court sentenced Petitioner to a total of 40 years at Level V, suspended after 30 years for decreasing levels of supervision. (D.I. 16-2 at Entry No. 38)

Petitioner appealed his convictions to the Delaware Supreme Court, arguing: (1) the trial court provided a defective accomplice liability instruction; (2) the State

2

committed prosecutorial misconduct by (a) referring to evidence not in the record; (b) disparaging trial counsel; (c) injecting personal opinion and experience into the trial; and (d) inflaming the jury by calling Petitioner pejorative names; (3) the trial court allowed improper testimony in violation of Delaware Rules of Evidence 701 and 702; and (4) the trial court erred by not performing a complete analysis under *Batson v. Kentucky*, 476 U.S. 79 (1986) regarding trial counsel's challenge during jury selection. (D.I. 16-3 at 4-20)  In October 2017, the Delaware Supreme Court issued an order affirming the Superior Court's judgment on all issues except the *Batson* issue, which it remanded to the Superior Court for a complete *Batson* analysis. (D.I. 16-3 at 4-20)  On remand, the Superior Court completed the analysis required by *Batson* and found that Petitioner had failed to prove purposeful discrimination. (D.I. 16-4 at 7-10)  The Delaware Supreme Court affirmed that decision on November 28, 2017, ruling that the Superior Court's *Batson* analysis was complete, supported by the evidence, and free of legal error. *See Broomer v. State*, 174 A.3d 622 (Table), 2017 WL 5900084, at *1 (Del. Nov. 28, 2017).

On October 22, 2018, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 16-2 at Entry No. 60)  The next day, Petitioner's retained counsel entered his appearance to represent Petitioner in his Rule 61 proceeding. (D.I. 16-2 at Entry

3

No, 63)  Post-conviction counsel filed an amended Rule 61 motion on March 29, 2019.  (D.I. 16-2 at 13)

On March 19, 2019, while his Rule 61 motion was pending, Petitioner filed a petition for federal habeas relief in this Court.  (*See* D.I. 2 in *Broomer v. Metzger*, C.A. No. 19-588-LPS)  On May 8, 2019, the Honorable Leonard P. Stark dismissed the petition without prejudice for failing to exhaust state remedies.  (D.I. 16-5 )

On October 25, 2021, the Superior Court denied Petitioner's Rule 61 motion. *See State v. Broomer*, 2021 WL 4987625, at *14.  The Delaware Supreme Court affirmed that decision on August 22, 2022.  *See Broomer v. State*, 284 A.3d 76 (Table), 2022 WL 3581111, at *1 (Del. Aug. 22, 2022).

On September 21, 2022, Petitioner filed a document in the Delaware Superior Court, which was docketed as a request for a writ of state habeas relief. (D.I. 16-2 at Entry No. 135)  On September 28, 2022, the Superior Court judge informed Petitioner that, based on "the caption, form and contents of the document, it is clear that [Petitioner] intended this application to be filed in the federal district court as a petition for relief under 28 U.S.C. § 2254."  (D.I. 16-6)  The Superior Court advised Petitioner that he must file the petition with the Clerk of the United States District Court of Delaware.  (*Id.*)

Petitioner did not file a federal habeas petition in this Court.  Instead, on October 5, 2022, Petitioner filed a second Rule 61 motion in the Delaware Superior Court.  (D.I. 16-2 at Entry No. 139)   The Superior Court summarily dismissed the motion on October 27, 2022.  *See State v. Broomer*, 2022 WL 15702802, at *2 (Del. Super. Ct. Oct. 27, 2022).  The Delaware Supreme Court affirmed that decision on April 24, 2023.  *See Broomer v. State*, 297 A.3d 286 (Table), 2023 WL 3067051, at *1 (Del. Apr. 24, 2023).

Petitioner's habeas Petition asserting 32 claims for relief was docketed in this Court on May 18, 2023.  (D.I. 2)  Petitioner filed amendment to the Petition on July 5, 2023, which added two more claims.  (D.I. 8; D.I. 8-1)  According to the Amended Petition, "all 34 of [Petitioner's] grounds are [the] result of ineffective assistance of trial counsel, direct appeal counsel, and postconviction relief counsel."  (D.I. 8 at 6)

On October 30, 2023, Petitioner filed in the Delaware Superior Court a Rule 35 motion for modification of sentence, which the Superior Court treated as a third Rule 61 motion.  (D.I. 16-2 at Entry Nos. 149, 150)  The Superior Court summarily denied the third Rule 61 motion as procedurally barred on November 6, 2023.  *See State v. Broomer*, 2023 WL 7299875 (Del. Super. Ct. Nov. 6, 2023).

In December 2023, the State simultaneously filed in this Court a Motion for Leave to File a Motion to Dismiss (D.I. 16) and Motion to Dismiss the Petition as

5

Time Barred (D.I. 16-1).  Petitioner filed his first Response in opposition on

December 29, 2023 (D.I. 18), and his second Response in opposition on February

6, 2024 (D.I. 32).

## II.    ONE YEAR STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") "to reduce delays in the execution of state and federal criminal

sentences . . . and to further the principles of comity, finality, and federalism."

*Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  AEDPA prescribes a one-year

period of limitations for the filing of habeas petitions by state prisoners, which

begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B) or (C). Petitioner contends the limitations period for the instant Petition did not begin to run until August 22, 2022 – the date on which the Delaware Supreme Court affirmed the denial of his Rule 61 motion – because that is the date on which the factual predicate of his ineffective assistance of postconviction counsel claims could have been discovered. (D.I. 18 at 28) The Court rejects this argument. Petitioner's ineffective assistance of postconviction counsel claims are necessarily intertwined with and dependent on the other claims presented in the instant Petition. Those "other" claims – which raise issues concerning Petitioner's trial and the assistance of the attorneys who represented him during his trial and direct appeal – were discoverable before August 22, 2022.[2] Given these circumstances, the one-year

---

[2]Even if the ineffective assistance of postconviction claims are subject to a later starting date, the later starting date would not apply to the other claims because §

7

period of limitations began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Petitioner's convictions on November 28, 2017, and he did not seek review by the United States Supreme Court. As a result, his judgment of conviction became final on February 26, 2018. Applying the one-year limitations period to that date, Petitioner had until February 26, 2019 to timely file a habeas petition. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary

---

2244(d)(1) is applied on a claim-by-claim basis. *See Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004). Additionally, a standalone claim alleging ineffective assistance of postconviction counsel is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(i); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Therefore, even if Petitioner's ineffective assistance of postconviction counsel claims are subject to a later starting date, as a threshold issue, the claims would be summarily dismissed for failing to assert a proper basis for habeas relief.

method, *i.e.*, the limitations period expires on the anniversary of the triggering

date). Petitioner, however, did not file the instant Petition until May 18, 2023,

approximately four years and three months after that deadline. Thus, the Petition is

time-barred and should be dismissed, unless the limitations period can be

statutorily or equitably tolled, or Petitioner makes a gateway showing of actual

innocence. *See Jones,* 195 F.3d at 158; *Wallace,* 2 F.4th at 151 (explaining that

actual innocence is an "exception to the statute of limitations" rather than an

"extension to the statute of limitations via equitable tolling."). The Court will

discuss each doctrine in turn.

**A. Statutory Tolling**

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls

AEDPA's limitations period during the time the motion is pending in the state

courts, including any post-conviction appeals, provided that the motion was filed

and pending before the expiration of AEDPA's limitations period. *See Swartz v.*

*Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled

for the time during which an appeal from a post-conviction decision could be filed

even if the appeal is not eventually filed. *See Swartz,* 204 F.3d at 424. The

limitations period, however, is not tolled during the ninety days a petitioner has to

file a petition for a writ of certiorari in the United States Supreme Court regarding

a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

A post-conviction motion "is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998) (noting that a properly filed application is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing."). Thus, if a state postconviction motion is rejected by a state court as untimely, "that is the end of the matter" for § 2244(d)(2) purposes; the motion is not "properly filed" and does not statutorily toll AEDPA's limitations period. *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005); *accord Jenkins v. Sup't of Laurel Highlands*, 705 F.3d 80, 86 (3d Cir. 2013) (explaining that a state court dismissal of a state post-conviction motion as untimely " is the end of the matter" for purposes of § 2244(d)(d), "regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits.").

In this case, the limitations clock started to run on February 27, 2018 and ran for 237 days until Petitioner filed his first Rule 61 motion on October 22, 2018.

The Superior Court denied the Rule 61 motion on October 25, 2021, and the Delaware Supreme Court affirmed that decision on August 22, 2022.  In these circumstances, the Rule 61 motion tolled the limitations period from October 22, 2028 through August 22, 2022.[3]

The second Rue 61 motion that Petitioner filed on October 5, 2022 does not trigger statutory tolling because the Superior Court summarily dismissed the motion as untimely, which means that it was not properly filed for § 2244(d)(2) purposes.  Consequently, when the limitations clock started to run on August 23, 2022 (after the Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's first Rule 61 motion), the limitations clock ran for the remaining 128 days until the limitations period expired on December 29, 2022.[4]

Thus, even after applying the available statutory tolling, the Petition is time-barred, unless equitable tolling applies or Petitioner establishes a gateway claim of actual innocence.

---

[3]Petitioner's first federal habeas petition filed in this Court on March 19, 2019, that was dismissed without prejudice on May 8, 2019, has no statutory tolling effect. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

[4]Petitioner's third postconviction motion, filed on October 30, 2023 (D.I. 16-2 at Entry No. 149) has no statutory tolling effect because the limitations period had already expired by that date.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52. Additionally, the obligation to act diligently "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the petitioner] is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013). The Third Circuit has explained that extraordinary circumstances for equitable tolling purposes may be found where: (1) the defendant actively misled the plaintiff; (2) the plaintiff was in some extraordinary

12

way prevented from asserting his rights; or (3) the plaintiff timely asserted his
rights mistakenly in the wrong forum. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d
Cir. 2001).

The Court views Petitioner's two Responses in opposition to the State's
Motion to Dismiss as raising the following four arguments for equitable tolling: (1)
postconviction counsel abandoned him (D.I. 18 at 10-11, 18-19; D.I. 32 at 2); (2)
the dismissal of his first federal habeas petition in 2019 constitutes an
extraordinary circumstance because he was not given a chance to delete the
unexhausted claims and proceed only on the exhausted claims (D.I. 18 at 19; D.I.
32 at 11); (3) he mistakenly asserted his rights in the wrong forum by filing a
federal habeas petition in the Superior Court (D.I. 18 at 20); and (4) he believed he
was required to exhaust state remedies for his allegations of ineffective assistance
of postconviction counsel before filing the instant habeas Petition (D.I. 18 at 20;
D.I. 32 at 11).

First, Petitioner contends he is entitled to equitable tolling because
postconviction counsel "abandoned" him. Abandonment by one's attorney might
constitute extraordinary circumstances in certain situations. *See Holland*, 560 U.S.
at 650-53. For instance, where a petitioner is "stymied by [an attorney's]
misleading statements on matters that should have been within

13

[the attorney's] knowledge" and by the attorney's "unresponsiveness and neglect of the case," then "extraordinary circumstances stood in the way of the petitioner's ability to file. *See Ross*, 712 F.3d at 803. However, equitable tolling is not available due to an attorney's ordinary negligence. *See Lawrence v. Florida,* 549 U.S. 327, 336 (2007) (holding that "counsel's mistake in miscalculating the limitations period" is not extraordinary circumstance warranting equitable tolling).

Petitioner appears to base his argument concerning attorney abandonment on postconviction counsel's numerous extensions of time to file documents in his Rule 61 proceeding, the fact that the Delaware courts denied Petitioner's Rule 61 motion, postconviction counsel's failure to communicate with Petitioner, postconviction counsel's failure to turn over Petitioner's files, and postconviction counsel's failure to file a notice of appeal concerning the denial of Petitioner's Rule 61 motion. The Superior Court docket supports Petitioner's contentions about postconviction counsel's numerous extension requests in his Rule 61 proceeding and failure to file a notice of appeal on Petitioner's behalf. Yet, the Superior Court docket also indicates that Petitioner was not "stymied" by postconviction counsel's actions, because Petitioner timely filed a postconviction appeal on his own behalf.

14

Additionally, postconviction counsel's failure to consistently communicate with Petitioner and postconviction counsel's numerous requests for extensions of time did not adversely affect Petitioner's ability to file a timely § 2254 petition. The first Rule 61 motion statutorily tolled the limitations period, and Petitioner had four months to file a timely § 2254 petition once the Delaware Supreme Court adjudicated his Rule 61 appeal. Thus, the Court cannot conclude that postconviction counsel's actions – or inactions – constituted an extraordinary circumstance.[5]

Even if the Court were to treat postconviction counsel's actions as rising to the level of neglect sufficient to constitute an extraordinary circumstance, Petitioner has not shown how postconviction counsel's conduct actually prevented him from filing a timely federal habeas petition. The fact that Petitioner filed a federal habeas petition in the Superior Court in September 2022 (discussed below) and a second Rule 61 motion in October 2022 demonstrates that postconviction counsel's alleged errors and inaction did not prevent Petitioner from filing a habeas petition during the remaining four months of the limitations period. Given these circumstances, the Court cannot conclude that postconviction counsel's conduct warrants equitable tolling.

---

[5] In reaching this conclusion, the Court is not condoning the attorney's conduct.

Second, Petitioner argues that the dismissal of his first habeas petition in 2019 constitutes an extraordinary circumstance for equitable tolling purposes because he was not given a chance to delete the unexhausted claims and proceed only on the exhausted claims. Petitioner's argument is unavailing. In *Urcinoli v. Cathel*, 546 F.3d 269 (3d Cir. 2008), the Third Circuit held that a district court's dismissal of an earlier timely-filed mixed petition without first giving the petitioner the chance to delete the unexhausted claims constitutes an extraordinary circumstance for equitable tolling purposes **if** AEDPA's statute of limitations period was already expired at the time of the petition's dismissal. *See Urcinoli*, 546 F.3d at 273-77 (equitable tolling appropriate when district court dismissed exhausted claims in mixed petition that were already beyond the statute of limitations) (emphasis added). According to the Third Circuit in *Urcinoli*, the district court's dismissal constituted an extraordinary circumstance because that dismissal completely foreclosed any possibility that the prisoner could obtain federal habeas relief on claims he had properly exhausted and presented in the earlier mixed habeas petition. *See id.* at 273-77.

The instant situation is distinguishable from *Urcinoli*. In March 2019, Petitioner filed a habeas petition containing exhausted and unexhausted claims. (*See* D.I. 2 in *Broomer v. Metzger*, C.A. No. 19-588-LPS) The Honorable Leonard P. Stark dismissed Petitioner's 2019 petition without prejudice because Petitioner

16

admitted in his petition that his first Rule 61 motion – asserting the unexhausted

ineffective assistance of counsel claims that he included in his 2019 petition – was

pending in the Superior Court.  Petitioner was not given the option of deleting the

unexhausted claims.  Importantly, however, only 237 days of the limitations period

had lapsed when Petitioner filed his first Rule 61 motion, which means that, once

the Delaware Supreme Court affirmed the denial of Petitioner's first Rule 61

motion on August 22, 2022, Petitioner had four months[6] – or until December 29,

2022 – to timely file a habeas petition.  In other words, the dismissal of Petitioner's

first petition in 2019 did not completely foreclose any possibility that Petitioner

could obtain habeas relief on his formerly properly presented and exhausted

claims.

Nevertheless, even if the Court were to treat the dismissal of Petitioner's

2019 petition as an extraordinary circumstance, Petitioner has not demonstrated

that he exercised reasonable diligence in pursuing his habeas claims.  Petitioner

does not explain why he did not file a federal habeas petition in this Court during

the remaining four months of the limitations period.  To the extent Petitioner's

---

[6]Four months was a reasonable amount of time for Petitioner to file a federal
habeas petition after exhausting state remedies in the state courts. *See Crews v.
Horn*, 360 F.3d 146, 154 (3d Cir. 2004) (explaining 30 days is a "reasonable
interval" after denial of relief in state court to return to federal court).

failure to timely file a § 2254 was due to his own ignorance of the law or a mistake,[7] such factors do not warrant equitable tolling or warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

Third, Petitioner appears to argue that he is entitled to equitable tolling because he mistakenly but timely filed a federal habeas petition in the Delaware Superior Court on September 21, 2022. (*See* D.I. 16-2 at Entry No. 135; D.I. 18 at 20) The argument is unpersuasive. While a petitioner may be entitled to equitable tolling where he has timely asserted his rights mistakenly in the wrong forum, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003).

Here, when the Superior Court received Petitioner's federal habeas petition, the Superior Court sent a letter to Petitioner dated September 28, 2022 stating that

---

[7]To the extent Petitioner implicitly argues that his erroneous filing of a federal habeas petition in the Superior Court in September 2022 demonstrates he exercised reasonable diligence, the argument is unavailing for the reasons provided in the Court's discussion concerning Petitioner's September 2022 filing in the Superior Court.

he had erroneously filed the federal petition in state court. The Superior Court

advised Petitioner that, in order to perfect his filing, he must file the federal habeas

petition in the federal District Court and ensure appropriate service on the proper

state officials. (D.I. 16-2 at Entry No. 138; D.I. 16-6) When the Superior Court

sent this letter to Petitioner, he still had three months – until December 29, 2022 –

to timely file a federal habeas petition. Yet, Petitioner waited another eight months

after the Superior Court's letter – until May 18, 2023 – to file the instant Petition.

Presumably in an effort to explain why he did not file a petition by the

expiration of the December 2022 filing deadline, Petitioner alleges that he called

the Superior Court upon receiving the letter, and was told that his federal petition

would be forwarded to this Court.[8] (D.I. 18 at 20) The petition was not forwarded

here, and Petitioner does not explain why – aside from one unsupported statement

---

[8]Petitioner asserts that he transmitted his petition documents "on multiple
occasions to prison authorities, namely, in March 2019, September 2022, and May
2023." (D.I. 18 at 21) He also asserts, "It is unclear to [him] why the clerk of the
court sent [his September 2022] petition to the wrong judge, and [he] should not be
at fault for the clerk's mistake." (D.I. 18 at 20) As for Petitioner's March 2019
and May 2023 filings, the record contains the envelopes in which Petitioner mailed
his petitions, and those envelopes appear to have been addressed by Petitioner
himself. (D.I. 2-2 at 2; D.I. 2 at 22 in *Broomer v. Metzger*, C.A. No. 19-588-LPS)
The Court does not have a copy of the petition or envelope that was filed in the
Superior Court in September 2022. Nevertheless, since Petitioner addressed the
envelopes for his federal filings, the Court rejects as specious Petitioner's attempt
to blame the incorrect filing of his September 2022 petition on prison or court
employees.

that he called an unspecified court on one more occasion – he did not make additional inquiries to the Superior Court or this Court confirming that the petition was, in fact, forwarded. Accordingly, even if Petitioner's 2022 filing of a federal habeas petition in the Superior Court constitutes an extraordinary circumstance, Petitioner's failure to comply with the Superior Court's explicit instructions on how to properly file that petition in the federal courts, and his failure to ascertain if the petition had been transferred to this Court,[9] demonstrates he did not exercise the reasonable diligence necessary to trigger equitable tolling.

And finally, Petitioner contends he is entitled to equitable tolling because he filed a second Rule 61 motion in the Superior Court in October 2022 – presumably in lieu of filing a petition in this Court at that time – in order to exhaust state remedies for his new ineffective assistance of postconviction counsel claims before including those claims in a federal habeas petition.[10] A standalone claim of ineffective assistance of postconviction counsel is not cognizable on federal habeas

---

[9]The Court is not asserting that the Superior Court had a duty to transfer the petition here, or that the Superior Court erred in failing to transfer the petition here. The Court is merely accepting Petitioner's explanation at face value and putting in context its determination that Petitioner did not exercise reasonable diligence.

[10]Petitioner appears to argue that he was required to exhaust state remedies by filing a second Rule 61 motion before filing a habeas petition because Judge Stark's May 2019 Memorandum Order dismissing his March 2019 habeas petition directed him to exhaust state remedies. (D.I. 18 at 20) Judge Stark's May 2019 dismissal clearly related only to the claims raised in the March 2019 petition.

review. *See* 28 U.S.C. § 2254(i). Consequently, Petitioner's mistaken belief that exhaustion was necessary for noncognizable issues does not trigger equitable tolling. *See Taylor*, 2004 WL 1151552, at *5-6.

Accordingly, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented.

### C. Actual Innocence

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623034 (1998). A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace*, 2 F.4th at 151. Petitioner's conclusory statement that his "grounds show actual innocence" does not constitute a credible claim of actual innocence, because he does not provide new evidence of his factual innocence.

---

Therefore, to the extent Petitioner is attempting to establish that his failure to timely file the instant Petition was due to being misled by the Court, the argument is unavailing.

For all of these reasons, the Court concludes that the Petition is time-barred.

## III.  PENDING MOTIONS

The Court has determined that the instant Petition must be dismissed as time-barred. Therefore, it will dismiss as moot the following motions: (1) Motion for an Extension of Time to File Response to State's Motions (D.I. 17); (2) Motion to Expand Record and Receive State Court Transcripts (D.I. 30); (3) Motion for the Appointment of Counsel (D.I. 34); and (4) Motion for an Evidentiary Hearing (D.I. 35).

## IV.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

22

The Court has concluded that the instant Petition is time-barred and does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court will deny the instant Petition as time-barred without holding an evidentiary hearing or issuing a certificate of appealability.  The Court will enter an order consistent with this Memorandum Opinion.